**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In re:<br><br>Bashas' Inc.;<br>Bashas' Leaseco Inc.; and<br>Sportsman's LLC,<br><br>    Debtors.<br><br>St. Joseph's Foundation and Barrow Neurological Foundation,<br><br>    Appellants,<br><br>vs.<br><br>Bashas' Inc.; Bashas' Leaseco Inc.; and Sportsman's, LLC,<br><br>    Appellees. | No. CV 11-02031-PHX-FJM<br><br>**ORDER** |

    We have before us appellants' opening brief (doc. 11), appendix to appellants' opening brief (doc. 12), appellees' responsive brief (doc. 13), and appellants' reply brief (doc. 14). Appellants filed a claim against debtors in bankruptcy court and the court sustained debtors' objection to the claim.

**I**

    On February 28, 2005, Eddie Basha, acting on behalf of debtors, sent a letter to appellants promising to pay them $25,000 annually for ten years. He outlined a "commitment schedule" from January 2006 through January 2015. (Doc. 12, ex. 1). The

letter does not mention a specific purpose for the gift, but appellants claim the pledge arose out of St. Joseph's Pushing Boundaries Capital Campaign, the purpose of which was to finance construction of a new Barrow Tower. The Barrow Tower was completed in 2006.

Debtors donated $40,000 to appellants before filing for Chapter 11 bankruptcy on July 12, 2009. St. Joseph's filed a claim for $145,000. Debtors objected, and because the bankruptcy court decided that the pledge was unenforceable it disallowed the claim. It held that the promise was not a legally enforceable contract because it was made without consideration. The court also found promissory estoppel inapplicable.

## II

The bankruptcy court held that "St. Joseph's gave no consideration for Debtors' promise to contribute to the campaign." In re Bashas' Inc., No. 2:09-BK-16050-JMM, Memorandum Decision at 3 (Sept. 29, 2011) (hereinafter "Memorandum Decision"). Appellants argue that the increased exposure and community goodwill they provided to the debtors constitute consideration.

"[L]egal consideration, 'like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value that is recognized by all parties as the moving cause.'" Demasse v. ITT Corp., 194 Ariz. 500, 507, 984 P.2d 1138, 1145 (1999) (quoting Yuma Nat'l Bank v. Balsz, 28 Ariz. 336, 343, 237 P. 198, 200 (1925) (brackets and ellipses omitted)). Appellants contend that they "took great strides to acknowledge Bashas' for its commitment." (Doc. 11 at 8). They do not contend that they promised to publicly honor debtors or that they communicated to debtors an intent to recognize their pledge. Perhaps if appellants demonstrated that they promised to acknowledge debtors *in exchange for* Bashas' promise to donate money, there might have been consideration. See Employers Reinsurance Corp. v. GMAC Ins., 308 F. Supp. 2d 1010, 1017 & n.4 (D. Ariz. 2004). They did not do this. We agree with the bankruptcy court that appellants gave no consideration in return for debtors' pledge. There is no contract here.

## III

- 2 -

1    Arizona has adopted the definition of promissory estoppel found in the Restatement
2 (Second) of Contracts § 90(1) (1981). Chewning v. Palmer, 133 Ariz. 136, 138, 650 P.2d
3 438, 440 (1982). To prevail under this theory, appellants must establish that debtors made
4 a promise that they reasonably should have expected appellants to rely upon, appellants
5 actually relied on the promise to their detriment, and injustice can only be avoided by
6 enforcement of the promise. The bankruptcy court found the appellants' claimed reliance
7 "not credible," noting that the Barrow Tower was completed despite debtors' contribution of
8 only a fraction of their pledged amount. Memorandum Decision at 3. We agree. There was
9 no detrimental reliance here. Nor is there any injustice. Enforcement of the promise to the
10 detriment of creditors who gave true consideration would be an injustice.

11    The court then considered subsection 2 of § 90, which provides that "[a] charitable
12 subscription or a marriage settlement is binding under Subsection (1) without proof that the
13 promise induced action or forbearance." Although Arizona has not adopted subsection 2,
14 appellants urged the bankruptcy court to apply this provision. It declined, preferring to "tread
15 the more conventional path" by requiring consideration or reliance to make a charitable
16 pledge enforceable. Memorandum Decision at 2. As of 2005, only two states, Iowa and
17 New Jersey, appeared to have adopted subsection 2 of § 90. Evelyn Brody, The Charity in
18 Bankruptcy and Ghosts of Donors Past, Present, and Future, 29 Seton Hall Legis. J. 471, 514
19 n.133 (2005). See also E. Allan Farnsworth, Promises and Paternalism, 41 Wm. & Mary L.
20 Rev. 385, 404-05 (2000) ("The exception for charitable subscriptions has played to mixed
21 reviews.").

22    We doubt whether Arizona would or should adopt § 90(2). But even if it did, the
23 promise is still not enforceable. While subsection 2 dispenses with subsection 1's
24 requirement of reliance, the element of injustice still must be satisfied. Appellants have not
25 shown that injustice can only be avoided by enforcement of this promise. Debtors
26 experienced an extreme negative change in their economic situation after making the pledge.
27 Appellants finished construction of Barrow Tower without the promised donations. Their
28 existence was not threatened because the pledge was not paid, nor did they enter into binding

contracts or suffer liabilities in reliance on the pledge. There is no evidence that other donors made pledges in consideration of the debtors' promise.

Moreover, even if a state adopted subsection 2, its application to a federal bankruptcy proceeding would frustrate the objective of according true creditors a fair shake. It is greedy for a not-for-profit entity to insist on a gift, made at a time a donor could make it, even after the donor could no longer make it without damaging those who supplied goods and services. Appellants supplied nothing to debtors.

## IV

We conclude that debtors' promise to contribute to appellants was not supported by consideration, appellants did not rely on this promise, and this is not a case where injustice can only be avoided by enforcement of the promise.

Accordingly, **IT IS ORDERED AFFIRMING** the bankruptcy court's order disallowing appellants' claim.

DATED this 27th day of March, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge